**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 12-cv-03009-MSK-MJW

**STEVE A. MOODY,**

    **Plaintiff,**

v.

**FMS, INC.,**

    **Defendant.**

___

**OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**
___

**THIS MATTER** comes before the Court pursuant to Defendant FMS, Inc.'s ("FMS") Motion for Summary Judgment **(# 23)**, Mr. Moody's response **(# 26)**, and FMS' reply **(# 27)**.

## FACTS

FMS is a debt collector. In November and December 2011, it made a series of telephone calls to Mr. Moody in an attempt to collect on a debt owed by him. The contents (and to some extent, the frequency) of those calls form the factual core of this case. Mr. Moody asserts that FMS' calls violated numerous provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and its state-law analogue, the Colorado Fair Debt Collection Practices Act ("CFDCPA"), C.R.S. § 12-14-101 *et seq.* Mr. Moody asserts seventeen separate claims, each asserting that FMS' calls violated a specific provision of the FDCPA or CFDCPA.

FMS moves **(# 23)** for summary judgment on each of Mr. Moody's claims, arguing that Mr. Moody cannot demonstrate that the calls he received violate the relevant statutory

1

provisions.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Mr. Moore's request for additional time to respond

At the time Mr. Moody filed his summary judgment response, he had yet to take the deposition of FMS' representative. Thus, Mr. Moody argues, the Court should defer consideration of the motion until that deposition could be taken. Mr. Moody cites to Fed. R. Civ. P. 56(f), but that rule was redesignated as Rule 56(d) in 2010. Under it a nonmovant seeking to delay resolution of a summary judgment motion pending further discovery must "present an affidavit that identifies the probable facts not available and what steps have been taken to obtain these facts." *FDIC v. Arciero*, ___ F.3d ___, 2013 WL 6698127 (10th Cir. Dec. 20, 2013), *citing Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006). The nonmovant must also "explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *Id.*

Mr. Moody's summary judgment response includes the affidavit of his counsel, Ms.

Bennecoff, in which she states that "during January and February 2013," she and FMS' counsel "communicated regarding the scheduling of depositions." Ms. Bennecoff "wanted to receive responses to [written discovery she propounded] prior to deposing Defendants' representative," and thus, "did not make further efforts to schedule the deposition of Defendant." She received FMS' discovery responses on April 1, 2013, and as of the date of her affidavit, May 21, 2013; she was "presently seeking to schedule the deposition." No supplementation to the affidavit, as to whether the deposition occurred or was otherwise delayed has been supplied. In addition, Ms. Bennecoff's affidavit gives no indication of "the probable facts" that she expected to obtain in the anticipated deposition, nor how those facts would rebut the facts alleged in FMS' motion.[1]

The Court finds that Mr. Moody has failed to make even a facial showing of the information necessary to warrant relief under Rule 56(d). If no deposition was taken during the past eight months, the Court finds that Mr. Moody was not been diligent in his attempts to promptly obtain the relevant information. *See e.g. Ferguson v. Shinseki*, ___ Fed.Appx. ___, 2013 WL 5651284 (10th Cir. Oct. 17, 2013) (party who had six months to conduct discovery and failed to show why that time was insufficient not entitled to relief under Rule 56(d)). If the deposition was taken, there was no supplementation of the motion for summary judgment or response thereto. Thus the Court concludes that whatever information was obtained was not

---

[1] Mr. Moody's brief makes a passing argument that he needs to complete FMS' deposition before responding in order to address "Defendant's intent, or lack thereof, to take legal action against Plaintiff" and "Defendant['s] inten[t] to report Plaintiff's debt to any credit reporting agencies." Mr. Moody has taken the position that FMS representatives made threats to this effect in telephone calls to him, but FMS' position in its summary judgment motion was that FMS' calls to Mr. Moody have merely played a prerecorded message (for which FMS has provided a transcript), and that no live representative of FMS has ever spoken to Mr. Moody. Because the script of the recorded call makes no mention of legal action or reporting to credit agencies, it is entirely unclear how Mr. Moody believes that a deposition of FMS is necessary to respond to the summary judgment motion.

material.  Accordingly, Mr. Moody's request for relief under Rule 56(d) is denied.

### B. Presence of disputed facts

The central dispute between the parties in this case involves the contents of telephone communications occurring between FMS and Mr. Moody in November and December 2011. The Court summarizes each side's contentions on this point.

FMS relies primarily on the affidavit of Michael Wolfer, its Vice President of Operations. Mr. Wolfer's affidavit attaches and interprets FMS' log of calls to and from Mr. Moody's telephone number.  Mr. Wolfer explains that, in situations where FMS places a call to a telephone number that is answered by an answering machine, FMS will either play a pre-recorded message, or will leave no message, depending on certain circumstances.  Mr. Wolfer states that the the only message that is left on debtors' answering machines is one stating, in pertinent part, "This is a message for [account full name] . . . This Walter Smith from FMS, Incorporated.  This is an attempt to collect a debt and any information obtained will be used for that purpose.  Please contact about an important business matter at 800-580-7611."  Mr. Wolfer states that FMS' call logs indicate that all of its calls to Mr. Moody's number were answered by an answering machine, and thus, all calls made to Mr. Moody's number either left the message above, or simply left no message.  Mr. Wolfer affirmatively states that Mr. Moody never placed any inbound calls to FMS, that no live representative of FMS ever spoke to Mr. Moody or left any message on his answering machine.

Mr. Moody's position on this issue is somewhat vaguer.  In his responses to FMS' interrogatories, Mr. Moody was asked to state the dates on which he contends FMS called him. Mr. Moody's response was "Plaintiff received repeated harassing telephone calls throughout

November 2011. Plaintiff cannot recall each and every specific date. . . . Plaintiff directs Defendant to its own internal records." Asked to state the dates on which Mr. Moody "had any live verbal communication with an[y] person that you alleged to be acting as Defendant FMS," he responded "Plaintiff received repeated harassing telephone calls throughout November 2011. Plaintiff cannot recall each and every specific date he had a live verbal conversation with Defendant's collectors. Plaintiff avers that he had multiple conversations with a collector who identified himself as a 'Walter Smith.' Plaintiff avers that he had contacts with other of Defendant's collectors." Asked to identify the dates of conversations in which an FMS representative made certain specified threats, Mr. Moody's response was that he "cannot recall the specific dates" of the conversations.

In support of his summary judgment response, Mr. Moody proffers his own affidavit, which states:

> 1. Throughout November and [December] 2011, FMS' collectors placed repeated and harassing calls to my home telephone.
>
> . . .
>
> 4. FMS' collectors did not identify themselves or tell me why they were calling my telephone. This was confusing to me as I did not always understand why they were calling or where they were calling from. They would just demand payment.
>
> 5. During this time, at least one of FMS' collectors indicated that non-payment of a debt is a crime, disgraceful, and would result in imprisonment.
>
> 6. Further, during this time, I was told by FMS' collectors that if I did not pay the debt, a lawsuit would be filed and my wages and/or checking account would be garnished.

The record does not indicate whether FMS took a deposition of Mr. Moody; the

statements quoted above reflect the entirety of his position on this matter.

The Court finds that there is a genuine dispute of fact – indeed, an extremely sharp dispute – between the parties as to the contents of FMS' calls to Mr. Moody.  FMS' position is that its only communication with Mr. Moody consisted of the pre-recorded message quoted above.  If the factfinder credits this testimony, it is clear that, as a matter of law, all of Mr. Moody's FDCPA/CFDCPA claims must fail.  The message simply identifies FMS, informs Mr. Moody that FMS is attempting to collect a debt, and asks Mr. Moody to call FMS.   Nothing in such a message would violate the FDCPA/CFDCPA.[2]  On the other hand, Mr. Moody has alleged that he had actual conversations with live FMS representatives on one or more occasions, and that those representatives threatened him with imprisonment, wage garnishments, and lawsuits.  Because the Court must construe all disputed facts in the light most favorable to Mr. Moody, it must, for purposes of this motion, adopt his contentions.

---

[2]   Mr. Moody asserts two claims that focus primarily on the <u>frequency</u> of the calls: his Second Claim for Relief invokes 15 U.S.C. § 1692d(5) and is Eleventh Claim for Relief cites C.R.S. § 12-14-106(1)(e).  Both statutes prohibit a debt collector from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously . . . ."

Courts construing these provisions look to the volume of calls made, the calling pattern, and the place to which they are made.  *Brown v. Hosto & Buchan, PLLC*, 748 F.Supp.2d 847, 851-52 (W.D.Tn. 2010).  Typically, courts find that "calling a debtor numerous times in the same day, or multiple times in a short period of time" can constitute a violation.  *Arteaga v. Asset Acceptance, LLC*, 733 F.Supp.2d 1218, 1229 (E.D.Ca. 2010).  However, there are few cases that find a colorable violation based simply on a single daily or near-daily call over a fairly short period of time, unaccompanied by any other oppressive conduct (such as calling family members or failing to honor an affirmative request by the debtor that calls stop).  Assuming the factfinder otherwise concluded that FMS' calls to Mr. Moody did indeed do nothing more than play the recorded message cited above, this Court would be inclined to find that the sheer frequency of those calls (an undisputed 22 instances in November 2011, with no more than one call being made on any single day) would be insufficient, of itself, to constitute a violation.  *Id.* (daily or near-daily calls over several months insufficient).  However, if the factfinder were to credit Mr. Moody's testimony that he had several threatening conversations with FMS representatives, the overall frequency of FMS' calls might, coupled with these additional circumstances of oppression, be sufficient to violate the cited statutory provisions.

FMS is doubtful of the validity of Mr. Moody's assertions, insofar as his testimony is largely lacking in the types of objective details -- dates of calls or identities of persons that he spoke to – that might permit his assertions to be challenged, while recalling specific-but-unverifiable details – specific harassing comments made by unidentified individuals – that favor him. FMS may very well be correct in believing that the factfinder will likely find Mr. Moody's testimony to be either mistaken or opportunistically-untrue, particularly when compared to FMS' automatically-recorded logs showing no live conversations occurred. But summary judgment is not a time for this Court to make credibility determinations or weight the relative merits of each side's case; the Court must assume that what Mr. Moody says is true. *Liberty Lobby*, 477 U.S. at 255. Assuming that FMS representatives did indeed speak in person to Mr. Moody and made the types of comments he alleges, each of Mr. Moody's FDCPA and CFDCPA claims would appear to have some merit. Accordingly, FMS is not entitled to summary judgment.[3]

---

[3] Needless to say, if the case were to proceed to trial and yield a verdict in FMS' favor, the Court could award FMS its attorney fees and costs against Mr. Moody if otherwise warranted. *Marx v. General Revenue Corp.*, 133 S.Ct. 1166, 1175-76 (2013).

## **CONCLUSION**

For the foregoing reasons, FMS' Motion for Summary Judgment **(# 23)** is **DENIED**. The parties shall promptly begin preparation of a proposed Pretrial Order in conformance with the previously-issued Trial Preparation Order **(# 18)** and shall jointly contact chambers, within 14 days, to schedule a Pretrial Conference.

Dated this 30th day of January, 2014.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge